IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03681-MDB

William Ward,

      Plaintiff,

v.

City of Pueblo; George Hypolite, Esq., in his professional capacity; Lori Pinz, in her professional capacity; Brian McCain, in his professional capacity; Marissa Pacheco, in her professional capacity.

      Defendants.

---

### DEFENDANTS' JOINT MOTION TO DISMISS FIRST AMENDED COMPLAINT
_____

Defendants[1], by and through undersigned counsel, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby jointly move the Court for dismissal of all claims against them as alleged in Plaintiff's Complaint and Jury Demand ("Complaint") [ECF No. 32-2, Exhibit B]. In support thereof, Defendants state as follows:

### I.      STATEMENT OF CONFERRAL

Undersigned counsel conferred with counsel for Plaintiff who opposes the relief requested herein.

### II.      INTRODUCTION

Plaintiff brings one claim against the City and City officials for First Amendment retaliation arising from Plaintiff's employment with the City. The Complaint does not

---

[1] The caption misspells Defendant Marisa Pacheco's first name. The correct spelling is "Marisa."

satisfy pleading standards sufficient to survive dismissal pursuant to F.R.C.P. 12(b)(6). As discussed in further detail below, the Complaint does not plausibly allege a First Amendment retaliation claim, *Monell* claim, or claims against the City official-Defendants.

### III.    STANDARD OF REVIEW

In order for a complaint to survive a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), it "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when its allegations, taken as true, allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory and formulaic recitations of the elements of a cause of action do not survive a motion to dismiss. *Id*.

### IV.    ARGUMENT

**A.    PROFESSIONAL/OFFICIAL CAPACITY CLAIMS AGAINST THE CITY OFFICIAL-DEFENDANTS ARE DUPLICATIVE OF CLAIMS AGAINST THE CITY.**

Plaintiff brings claims against the City officials (Defendants George Hypolite, Lori Pinz, Brian McCain, and Marisa Pacheco) in their "professional capacity" only. Defendants presume this is an error based on prior conferral and based on the redlined Complaint [Doc. 32-2, Exhibit A] which brings these claims in these Defendants' "individual" capacities only.  To the extent Plaintiff intends to bring official capacity claims, those claims are duplicative of the claims against the City and should therefore

2

be dismissed. *Mullins v. City of Colorado Springs*, 575 F. Supp. 3d 1360, 1367 (D. Colo. 2021); *Gaines v. City of Moore*, No. CIV-20-851-D, 2021 WL 3284269, at *2 (W.D. Okla. July 30, 2021) (dismissing claims against chief of police in his official capacity because they are redundant of claims against the city) (collecting cases).

## B.    TO THE EXTENT INDIVIDUAL CAPACITY CLAIMS ARE ALLEGED, THE CITY OFFICIALS ARE ENTITLED TO QUALIFIED IMMUNITY.

In order to survive dismissal of the City officials in their individual capacities, Plaintiff must plausibly allege a constitutional violation of clearly established law. *See Ashcroft*, 556 U.S. at 662. Plaintiff bears the "heavy two-part burden" of showing that: (1) Defendant violated Plaintiff's constitutional rights, and (2) such violation was clearly established at the time of the incident. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). The Court may conduct its qualified immunity analysis in whichever order it believes best suits this case. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If Plaintiff fails to satisfy either prong of this inquiry, the Court "must grant [the Defendant officer] qualified immunity." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

### 1.    No constitutional violation - First Amendment retaliation claim is not plausibly alleged.

Plaintiff alleges he was terminated in retaliation for his December 11, 2023 statements to news channel KRDO. Plaintiff alleges he also made these statements to unidentified "fellow employees." *See* Complaint, ¶¶ 42, 43, and 62. In order to succeed on his First Amendment retaliation claim in the context of employment, Plaintiff must establish the five elements outlined in the *Garcetti/Pickering* test: (1) speech was not

made pursuant to an employee's official duties; (2) speech was a matter of public concern; (3) government's interests, as employer, in promoting the efficiency of the public service do not outweigh the plaintiff's free speech interests; (4) protected speech was a motivating factor in the adverse employment action; and (5) defendants would not have reached the same employment decision in the absence of the protected conduct. *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221 (10th Cir. 2017). Plaintiff must plausibly allege all five elements in his Complaint. *Lincoln v. Maketa*, 880 F.3d 533, 539 (10th Cir. 2018) (finding, at 12(b)(6) stage, alleged retaliation would not have violated a clearly established constitutional right where one plaintiff arguably did not plausibly allege the first element, and another plaintiff arguably did not plausibly allege the fourth element).

Plaintiff has plausibly alleged the first element, as his comments were made to a news station rather than pursuant to his official duties. However, Plaintiff has not plausibly alleged elements 2-5.

### a.     Element 2: Speech is not a matter of public concern.

Fatal to Plaintiff's claim is that his speech is not a matter of public concern. Paragraph 43 of the Complaint provides, in part, the statement that Plaintiff made to the news and his fellow employees, and incorporates a link to the news article[2]. Plaintiff's full statement is as follows:

> "I put my hand in the center of his chest, pushing back, and that's when he struck me in the left jaw. It's just - how could this happen - how could nobody have

---

[2] *See* link incorporated into Complaint, ¶ 43: https://krdo.com/news/2023/12/11/city-of-pueblo-employee-attacked-on-city-property-voices-displeasure-with-lack-of-discipline-for-attacker/.

known that this was in management, that this was going to take place and not inform me so we could have been more prepared and had something in place.

[News commentator discussing email from Breon Valdez, CR Analyst I, asking for donations to Pinz while he was dealing with an endocrinology problem, while he was on leave during the investigation into the altercation].

Add insult to the wound by far, by being first absent from asking how you are, and actually flaunting it in your face that, by the way we want you to donate time into the perpetrator so that he's OK at home. Uh, it's unconscionable that they could even do that.

[News commentator: At this point is there anything the City can do to make this better?]

I don't think so. Uh there's too much water under the bridge."

The following additional statements were included in the written portion of the article:

"Nobody from the city management at any time called me at home, even though I have a city cell phone and I'm on call 24/7. No one informed me that this had taken place.

They seem to have been doing everything but being proactive. And it just disappoints me considerably. There's no reason for this to be this way, and by their actions, it sends a message that they really don't care who you are.

I think if it had been somebody that wasn't as connected, that the normal chain of events would have happened. But since Lori and the H.R. department are connected so strongly, that is exactly why nothing has happened for two and a half months.

We'll wait and see what happens. I hope this makes motivation on the city management's part to actually do something proactive. But at this point, I'm skeptical that it will.

The city has not reached out to me whatsoever to see how my well-being is, to see if I'm still agitated or if I feel safe in the workplace. They have never, to this day actually asked me how I am."   *See* Complaint, ¶ 43.

This was the entirety of Plaintiff's statement that was aired and published, and contrary to the allegations in the Complaint, Plaintiff did not state the City has a pattern and practice of failing to investigate incidents involving nepotism. Nor does the Complaint identify any other incident of nepotism and Plaintiff's news statements contradict this allegation by stating that normally this does not occur ("I think if it had been somebody that wasn't as connected, that the normal chain of events would have happened."). Contradictory allegations are not well pled and should be disregarded. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n,* 771 F.3d 1230, 1238 (10th Cir. 2014) ("A party may allege it was intended to benefit from a contract, but such allegations do not overcome contradictory statements in the text of a contract attached to their complaint. When a document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint."); *GFF Corp. v. Associated Wholesale Grocers, Inc., 1*30 F.3d 1381, 1385 (10th Cir. 1997) ("Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true."); *Matney v. Barrick Gold of N. Am.,* 80 F.4th 1136, 1151 (10th Cir. 2023) ("Matney cannot survive a motion to dismiss merely by pointing to allegations refuted by the documents on which those allegations are based.").

There are no non-contradictory allegations that plausibly allege Plaintiff's statements addressed matters of public concern rather than private employment grievances. Moreover, the Complaint does not allege whether the alleged improper investigations arise from the same incident or separate incidents, a distinction

6

necessary to conduct the required analysis. Based on the discernable allegations, Plaintiff's statements to KRDO appear to fall within the parameters of a personal dispute with a coworker and dissatisfaction as to how the dispute was handled, which are not matters of public concern. *Hawkins v. Bd. of Cnty. Commissioners of Coffey Cnty. Kansas,* 376 F. Supp. 3d 1200, 1213 (D. Kan. 2019) ("internal personnel disputes ordinarily will not involve a public concern") (citations and quotations omitted); *Madden v. Reg'l Univ. Sys., of Oklahoma*, 73 F. Supp. 3d 1341, 1347 (W.D. Okla. 2014) ("Here, the 'nepotism' email on which plaintiff relies is several steps further away from being a matter of "public concern" than the circumstances involved in *Clinger.* In the email, plaintiff did not criticize any particular person or process, or suggest misconduct on anyone's part..."); *Rogers v. Riggs*, 71 F.4th 1256, 1260 (10th Cir. 2023) (plaintiff's statement that she witnessed "favoritism by supervisors and administration" did not involve a matter of public concern); *Klaassen v. Atkinson*, 348 F. Supp. 3d 1106, 1171 (D. Kan. 2018) (noting the Tenth Circuit has explained the First Amendment does not protect employee criticisms of internal management decisions); *Oleynikova v. Bicha*, 453 F. App'x 768, 775 (10th Cir. 2011) ("We have repeatedly held that speech relating to internal personnel disputes is not of public concern, even where that speech may tangentially concern expenditure of public funds.") (citations and quotations omitted).

Plaintiff has therefore not plausibly alleged element 2 against any of the individual Defendants and, as a result, each is entitled to qualified immunity.

        ***b.    Element 3: The City's interest in maintaining the confidentiality of investigations outweighs Plaintiff's interest in speech.***

Plaintiff alleges the City "would not tolerate a supervisor violating confidentiality and releasing such private employee information to the news media during an interview." *See* Complaint, ¶ 36. Indeed, the City's interest in keeping employment investigations confidential outweighs Plaintiff's interest in making comments to the news about his own personnel dispute. *Lytle v. City of Haysville, Kan.,* 138 F.3d 857, 868 (10th Cir. 1998) ("Mr. Lytle's limited interests are far outweighed by the Department's interest in maintaining confidentiality and avoiding workplace disruption."); *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1297 (10th Cir. 2009) ("an investigative agency is within its rights as an employer to discipline an employee with access to confidential materials for discussing details of an agency investigation with an outside party").

Rather than raising his concerns through internal channels or to his superiors, Plaintiff chose to speak publicly to the media in violation of policy which weighs against him. *See* Complaint, ¶ 36 ("Q. Would the city tolerate a supervisor violating confidentiality and releasing such private employee information to the news media during an interview. A. No."); *see Belcher v. City of McAlester, Oklahoma*, 324 F.3d 1203, 1209 (10th Cir. 2003) (Fire department's interest in maintaining harmony among firefighters and their officers outweighed firefighter's interest in speaking out against the purchase of a fire truck, which he claimed stemmed from "corruption and kickbacks," and thus such speech was not protected under the First Amendment for purposes of § 1983 action brought after firefighter was reprimanded for contacting city council members; firefighter could have used less disruptive internal channels by explaining his concerns to his superiors at the fire department and following the chain of command

8

rather than speaking directly to council members in violation of department and city policy).

Lastly, as Plaintiff alleges he was terminated on July 24, 2024, more than seven months after his statements to the media on December 11, 2023, the City need only base Plaintiff's termination on "reasonable predictions of disruptions" rather than actual disruptions for this element to weigh in its favor. Complaint, ¶¶ 23 and 43; *Duda v. Elder*, 7 F.4th 899, 913, Footnote 10 (10th Cir. 2021) (finding no precise temporal boundary but that six-month gap between speech and discipline falls on the "long after" side of the line requiring actual disruption). The City's alleged concern over disclosure of confidential information from "outside counsel['s]" investigation was a reasonable prediction of disruption, given the risk of waiving attorney-client privilege and work product protections. *See* Complaint, ¶ 37; *see Collardey v. All. for Sustainable Energy, LLC*, 406 F. Supp. 3d 977, 983 (D. Colo. 2019) (finding attorney-client and work product privileges apply to employer's investigation into personnel matters). Based on the allegations in the Complaint, this element weighs in favor of the individual Defendants thus entitling them to qualified immunity.

### c.    *Elements 4 and 5:*

The lack of temporal proximity between Plaintiff's termination and comments to the media additionally weighs against him in elements 4 and 5.  As such, Plaintiff has not plausibly alleged causation sufficient for element 4 - that his comments were a motivating factor in his termination; nor element 5 - that Defendants would not have reached the same decision otherwise. *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248,

1253 (10th Cir. 2001) ("We have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.") (citations and quotations omitted).

Moreover, the Complaint alleges Defendants, including "Mr. McCain," initiated an investigation into Plaintiff "within days of the subject interview [occurring on December 11, 2023, as alleged in ¶ 42]. *See* Complaint, ¶ 68, bullet point no. 4. However, the Complaint also alleges Defendant McCain was not employed by the City until well after Plaintiff's comments to the media. The Complaint alleges McCain began his employment in April of 2024. *See* Complaint, ¶ 35. McCain could not have started an investigation before he was employed with the City, and to the extent he is alleged to have started an investigation later that was started earlier by different people, this is insufficient to allege a causal connection. *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1310 (10th Cir. 2005) (no causal connection where acts were "not perpetrated by the same people."). It additionally defies plausibility to suggest that McCain initiated the investigation in retaliation for comments that could not have referenced him because he was not yet employed at the time.  For the same reason, it is apparent that Plaintiff simply lists all Defendants' names as participating in conduct they could not have possibly participated in.

Finally, Plaintiff alleges the investigation culminating in his termination was triggered by independent grounds; namely, "formal complaints" and allegations of "insubordination." *See* Complaint, ¶¶ 16 and 20. The Complaint does not allege the

formal complaints against Plaintiff were fabricated or that Plaintiff did not engage in insubordinate conduct.  As such, his  comments to the media are not plausibly alleged to be the but-for cause of his termination. *Trant v. Oklahoma*, 754 F.3d 1158, 1167 (10th Cir. 2014) ("If there is a finding that [First Amendment] retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind") (citations and quotations omitted).  Given Plaintiff has failed to plausibly allege elements 4 and 5, the individual Defendants are entitled to qualified immunity.

### 2. No clearly established law.

For the reasons discussed above, Plaintiff cannot establish Defendants violated his constitutional rights. Even if he could, he will be unable to come forward with any case law standing for the proposition that Defendants should have known they were violating his rights under the circumstances alleged. Accordingly, Plaintiff cannot meet either prong of the two-part qualified immunity analysis and his claims against the individual Defendants should be dismissed. *Est. of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

### 3. Lack of personal participation alleged.

Even if Plaintiff has plausibly alleged a First Amendment violation, the claims against the City officials do not allege personal participation sufficient to withstand dismissal. Instead, the Complaint alleges collective conduct by all Defendants. *See* Complaint, ¶¶ 15, 16, 18, 20, 21, 23, 35, 37, 43, 46, 47, 48, 51, 52, 53, 54, 55, 57, 58,

11

59, 60, 61, 62, 63, 67, 68, 70, 71, 72, and 73. Where a § 1983 plaintiff lodges claims against a government agency and a number of government actors in their individual capacities, the plaintiff must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations[.]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (italics in original); *VanZandt v. Oklahoma Dep't of Hum. Servs.,* 276 F. App'x 843, 849 (10th Cir. 2008) ("To carry their burden, plaintiffs under the *Twombly* standard must do more than generally use the collective term "defendants." This Court, in *Robbins,* placed great importance on the need for a plaintiff to differentiate between the actions of each individual defendant and the actions of the group as a whole. This is because the purposes of plausibility, notice, and gatekeeping are best served by requiring plaintiffs to directly link an actual individual with the alleged improper conduct. When a plaintiff "fails to isolate the allegedly unconstitutional acts of each defendant," adequate notice is not provided to each defendant.") (citations omitted). Given the lack of allegations attributing specific conduct to specific Defendants, the individual Defendants are further entitled to qualified immunity.

### C.    NO *MONELL* LIABILITY/ OFFICIAL CAPACITY CLAIM

"To succeed on a municipal liability claim, a plaintiff must prove that (1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring." *Walmsley v. Johnson*, No. 24-CV-01425-NYW-SBP, 2025 WL 27375, at *6 (D. Colo. Jan. 3, 2025) (citations and quotations omitted). "An official policy

or custom under Monell may take several forms, including: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Id.*

The Complaint is devoid of allegations identifying any official policy or custom. Instead, the Complaint alleges a single instance of retaliation against only Plaintiff. While the Complaint makes vague references to a "pattern and practice" of not investigating complaints and tolerating nepotism (Complaint, ¶¶ 62, 67, and 42), these statements are conclusory and unsupported by facts necessary to determine whether sufficiently similar incidents occurred, such as the nature of the violations or number of violations. *Connick v. Thompson*, 563 U.S. 51, 62-63 (2011) (incidents to support custom must be similar to the violations at issue); *Est. of Burnett*, 763 F. Supp. 3d at ("While these incidents share some factual similarities, the Court is unprepared to say that two to three incidents over the span of nine years is sufficient to establish a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law.") (citations and quotations omitted); *Sexton v. Springs*, 530 F. Supp. 3d 1044, 1070 (D. Colo. 2021) (two alleged incidents, one in 2013 and one in 2019, are insufficient to show

a practice so permanent and well settled that it constitutes a custom or usage with the force of law); E*st. of Kowalski v. Shrader*, 2022 WL 19422, at \*20 (D. Colo. Jan. 3, 2022) (two incidents occurring over a span of four to five years insufficient to establish "widespread practice").

Plaintiff alleges that all Defendants terminated him (Complaint, ¶ 48); however, there are no allegations supporting these individuals are final policymakers. At most, Plaintiff provides their job titles, which are insufficient to label them final policymakers. *See* Complaint, ¶¶ 5-7; *Phelps v. Kansas,* No. 23-2206-DDC-RES, 2026 WL 863783, at \*17 (D. Kan. Mar. 30, 2026) ("Plaintiff's only response to this authority is to list the job titles of the three ostensible policymakers – the mayor, county attorney, and Undersheriff Bailey. That's it. No other discussion follows. That's not enough."). Plaintiff has not met his burden of plausibly alleging the identity of a policymaker (1) who is not meaningfully constrained by policies not of his making, (2) whose decision is final - i.e., not subject to any meaningful review, and (3) whose decision was made within the realm of his grant of authority. *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995). Further, should Plaintiff fail to establish constitutional violations by the City official Defendants, his *Monell* claim necessarily fails as well. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) (municipal liability requires a preliminary showing of a predicate constitutional violation); *Crowson v. Washington Cnty.,* 983 F.3d 1166, 1191 (10th Cir. 2020) (same). As Plaintiff has not plausibly alleged *Monell* liability, his claims against the City and the City officials in their official capacities must be dismissed.

14

**WHEREFORE**, for the reasons stated above, Defendants respectfully request this Court grant their Motion.

Respectfully submitted,

**SGR, LLC**

s/ *Courtney B. Kramer*
***Courtney B. Kramer***
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
Email: ckramer@sgrllc.com

s/ *Tiffany E. Toomey*
***Tiffany E. Toomey***
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
Email: ttoomey@sgrllc.com
*Counsel for Defendants Lori Pinz, Brian McCain, and Marisa Pacheco.*

**Vaughan & Demuro**

s/ *Sara L. Cook*
***Sara L. Cook***
Vaughan & Demuro
6760 Corporate Drive
Colorado Springs, CO 80919
Telephone:  (719) 578-5500
Email: scook@vaughandemuro.com
*Counsel for Defendant George Hypolite*

15

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 11th day of May, 2026, I electronically filed a true and correct copy of the above and foregoing **DEFENDANTS' JOINT MOTION TO DISMISS FIRST AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

Richard A. Orona, rorona@orona-garcia.com
John J. Mattey, jmattey@matteylaw.com
*Attorneys for Plaintiff*

Sara L. Cook, scook@vaughandemuro.com
*Attorney for Defendant George Hypolite*

/s/ Mariel Juniper
Legal Secretary